UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK FITZGERALD CHIOINO,<br><br>    Petitioner,<br><br>  v.<br><br>SCOTT M. KERNAN, warden,<br><br>    Respondent.<br>_____ / | No. C 06-932 MHP (pr)<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Patrick Fitzgerald Chioino, a prisoner at the state prison in Folsom, California, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. This matter is now before the court for consideration of the merits of the pro se habeas petition. For the reasons discussed below, the petition will be granted.

## BACKGROUND

In this habeas action, Chioino challenges the sentence imposed after he was convicted on a guilty plea in Monterey County Superior Court in 2004. Chioino pled guilty to robbery and admitted the sentence enhancement allegations that he had suffered one prior strike conviction and that he had personally used a firearm in the commission of the robbery. See Cal. Penal Code §§ 211, 1170.12(c)(1), 12022.53(b). He was sentenced to a total of 22 years in state prison. The 22-year term consisted of the upper term of 6 years on the robbery, doubled because of the prior strike conviction to make 12 years (6 x 2 = 12 years), plus a consecutive 10-year term for the firearm enhancement.

After his unsuccessful efforts on direct appeal, Chionio filed a federal petition for writ of habeas corpus.  This court determined that the allegation of a federal constitutional violation in the sentence imposed was cognizable in a federal habeas action and ordered respondent to show cause why the writ should not be granted.  Respondent filed an answer.  Petitioner did not file a traverse, and the deadline by which to do so passed long ago.  The matter is now ready for a determination on the merits of the petition.

**JURISDICTION AND VENUE**

This court has subject matter jurisdiction over this habeas action for relief under 28 U.S.C. § 2254.  28 U.S.C. § 1331.  This action is in the proper venue because the challenged conviction occurred in Monterey County, California, within this judicial district.  28 U.S.C. §§ 84, 2241(d).

**EXHAUSTION**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court.  See 28 U.S.C. § 2254(b), (c).  The parties do not dispute that state court remedies were exhausted for the claim asserted in the petition.

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

## DISCUSSION

A.  Background

The record in this case is extremely limited because Chioino pled guilty before his preliminary hearing started and because he was sentenced before a probation report was prepared.

The plea form Chioino signed stated that he was pleading guilty or no contest to a "211," and admitting a "strike 459 11/1/1995" and an "enhancement per 12022.53(b)," which meant he pled guilty/no contest to the robbery, admitted he had suffered a 1995 burglary conviction and admitted the personal use of a firearm. CT 14. The form reflected that he understood his maximum possible sentence was 22 years in prison. The form did not contain any consent to judicial fact finding. See CT 14-15.

At the change-of-plea hearing, Chioino admitted the same crime and enhancements. See RT 5-6. The only additional thing he admitted was that he committed the robbery "while inside a dwelling house, inside somebody's home." RT 5. As to the factual basis for the guilty plea, there was only a very brief description by defense counsel. When the judge

3

asked for a factual basis, the defense attorney stated: "In this matter, Your Honor, there was, in fact, a taking of a vehicle's keys, the use of a weapon during the course of that in the City of Marina." RT 6.  The defense attorney agreed when the court asked if "[i]t was in Marina that he entered someone's home to take a person's keys to their vehicle?" RT 6.  The court then accepted that there was a factual basis for the plea, and defense counsel stated that Chioino wanted to be sentenced that day and not wait for a probation report.  RT 6-7.  Defense counsel and the prosecutor stated that there was no legal cause why sentence could not be pronounced and both submitted the matter without comment.  RT 7.  The court promptly imposed a 22-year sentence on Chioino.  Chioino received a base sentence of the upper term of 6 years under California Penal Code § 213(a)(1)(B), which provided that the penalty for first degree robbery was 3, 4, or 6 years in prison.  That was doubled to 12 years based on the existence of prior conviction.  Then a 10-year enhancement for the firearm was added to the term.  The alleged error here was at the very first step, when the court selected the 6-year upper term as the base term.

B.      Federal Constitutional Law

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a trial by jury.  U.S. Const. amend. VI.  This right to a jury trial has been made applicable to state criminal proceedings via the Fourteenth Amendment.  Duncan v. Louisiana, 391 U.S. 145, 149-50 (1968).  The Supreme Court's Sixth Amendment jurisprudence was significantly expanded by Apprendi v. New Jersey, 530 U.S. 466 (2000), and its progeny, which extended a defendant's right to trial by jury to the fact finding used to make enhanced sentencing determinations as well as the actual elements of the crime.  "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 488-90 (2000).  The "statutory maximum" for Apprendi purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but

4

rather is the maximum he or she could impose without any additional findings. Blakely v. Washington, 542 U.S. 296, 303-04 (2004). The Court reaffirmed this basic principle when it determined that the federal sentencing guidelines violated the Sixth Amendment because they imposed mandatory sentencing ranges based on factual findings made by the sentencing court. See United States v. Booker, 543 U.S. 220, 233-38 (2005). The sentencing guidelines were unconstitutional because they required the court to impose an enhanced sentence based on factual determinations not made by the jury beyond a reasonable doubt. Id. at 243-245.

In Cunningham v. California, 127 S. Ct. 856 (2007), the Court held that California's determinate sentencing law ("DSL") violated the Sixth Amendment because it allowed the sentencing court to impose an elevated sentence based on aggravating facts that it found to exist by a preponderance of the evidence. Id. at 860, 870-71. The sentencing court was directed under the DSL to start with a "middle term" and then move to an "upper term" only if it found aggravating factual circumstances beyond the elements of the charged offense. Id. at 862. Concluding that the middle term was the relevant statutory maximum, and noting that aggravating facts were found by a judge and not the jury, the Supreme Court held that the California sentencing law violated the rule set out in Apprendi. Id. at 871. Although the DSL gave judges broad discretion to identify aggravating factors, this discretion did not make the upper term the statutory maximum because the jury verdict alone did not authorize the sentence and judges did not have the discretion to choose the upper term unless it was justified by additional facts. Id. at 868-69.

Cunningham had not yet been decided when Chionio's conviction became final. There thus is a serious question whether retroactive application of it would violate Teague v. Lane, 489 U.S. 288 (1989). The court need not address the unbriefed Teague issue. Even if Teague bars application of Cunningham to Chionio's case, he is entitled to relief because the California court's rejection of his claim was an unreasonable application of Blakely, which was decided before Chionio's conviction became final and poses no Teague concerns.

5

C.     The Claim Was Not Procedurally Defaulted

The first matter to consider is whether respondent is correct in his assertion that Chioino's Blakely claim is procedurally barred based on an estoppel or invited error kind of reasoning.

Before turning to the California Court of Appeal's estoppel analysis, it is important to note what that court did not find. That court did not find that the 22-year term was a negotiated component of the agreement — 22 years was the maximum permitted, but "the parties left it up to the court to decide whether or not to impose the maximum term." Cal. Ct. App. Opinion, p. 5. The state court also did not find a forfeiture of the claim based on the failure to make a Blakely objection at sentencing because the claim was of the deprivation of a fundamental constitutional right, and controlling precedent would have required the trial court to reject an objection as Blakely had not yet been decided. The California Court of Appeal then decided that Chioino had consented to the sentence. The court assumed for purposes of argument that the middle term was the statutory maximum that could be imposed without additional factual finding.

> That said, nothing prevents a defendant from waiving the rights described by the Apprendi and Blakely cases. "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." (Blakely, supra, 542 U.S. at [310].)
>
> In this case, although the plea agreement left open the possibility that the court could impose a sentence of less than 22 years, defendant never urged the court to do so. When the court asked for comments prior to imposing the sentence defendant's counsel responded: "Submit it." Furthermore, by waiving a probation report and insisting upon immediate sentencing defendant deprived the court of the information a trial court usually considers in exercising its sentencing discretion such as the facts and circumstances of the crimes, defendants' record of prior criminal conduct, information concerning the victims, relevant facts concerning defendant's social history, and the probation officer's evaluation of aggravating and mitigating factors. (Rule 4.411.5(a)(2)-(8).) The inescapable conclusion is that defendant consented to imposition of the sentence without any factfinding, whether by the court or by the jury. Stated another way, by requesting sentencing without the collection and assessment of sentencing factors that would have been contained in a probation report, and by failing to urge the court to impose a lesser sentence, defendant implicitly agreed that his conduct warranted the upper term sentence. (See Advisory Com. com., rule 4.412(b) ["a defendant who, with the advice of counsel, expresses agreement to a specified prison term normally is acknowledging that the term is appropriate for his or her total course of conduct."].) Consequently, the court did not deprive defendant of his constitutional right to a jury trial.

6

Cal. Ct. App. Opinion, pp. 7-8.

This court disagrees with respondent's argument that the state appellate court imposed a procedural bar. Under the procedural default doctrine, a federal court will not review questions of federal law decided by a state court if the decision rests on a state law ground that is independent of the federal question and adequate to support the judgment, Coleman v. Thompson, 501 U.S. 722, 729 (1991). Here, the alleged ground for rejection lacks the necessary independence and is of dubious adequacy.

This court sees the California Court of Appeal's decision as an application of Blakely, in that it found consent to the sentence imposed based on the existence of a condition identified in Blakely, i.e., that the defendant stipulated to the relevant facts or consented to judicial factfinding. See Cal. Ct. App. Opinion, p. 7. That the state appellate court was applying Blakely is evidenced by its quotation from the particular sentence in Blakely regarding consent. The application of the federal constitutional decision was not a rejection of the claim on a state law ground independent of the federal question. The state court's rejection of the claim did not rest on a state law ground independent of the federal question.

Moreover, the adequacy of the alleged state procedural rule is questionable in light of the California Supreme Court's later decisions excusing the failure to assert the Blakely error at the trial court level. The California Supreme Court thought that the Apprendi line of cases was changing the law in a rather surprising way and, in Black II, rejected the argument that a defendant had forfeited his right to raise the jury trial issue because he had not objected to the procedure at the time of sentencing. People v. Black, 41 Cal. 4th 799, 811 (Cal. 2007) ("Black II"); see also People v. Sandoval, 41 Cal. 4th 825, 837 n.4 (Cal. 2007). Although a forfeiture is different from consent, the state high court's forgiveness of the failure to object to a procedure does call into question the adequacy of a purported procedural bar based on consent to that same procedure.

Respondent identifies People v. Hester, 22 Cal. 4th 290, 295 (Cal. 2000), as authority for the alleged state procedural rule that a "defendant may be estopped from complaining about a sentence, even if it is unauthorized, if the defendant agreed to it as part of a plea

7

agreement." Resp. Memo. of P&As, p. 6.  Hester is distinguishable because the defendant there entered a plea in exchange for an agreed term of four years in prison; by contrast, the California Court of Appeal specifically determined that Chioino's plea was not for an agreed 22-year term but only set 22 years as the maximum.  See Cal. Ct. App. Opinion, p. 2; see Hester, 22 Cal. 4th at 295.

The court finds that the California Court of Appeal did not apply a state procedural rule to bar consideration of Chioino's claim.  The claim is not procedurally defaulted.  The California Court of Appeal applied Blakely, and the propriety of that application will be considered in the next section.

D.   Analysis Of The Merits

There was Blakely error here.  The record discloses that Chioino made three admissions:  he was guilty of robbery, he had suffered a prior conviction and he had used a firearm in the robbery.   The upper term base sentence he received was not permitted based on those admissions.

To determine whether to impose the lower, middle or upper term sentence for a crime under California's DSL, the sentencing judge considers the aggravating circumstances and mitigating circumstances relating to the crime and defendant.  See Cal. Rules of Court 4.420, 4.421, 4.423.

Three circumstances under Rule 4.421 were identified by the sentencing judge as supporting the choice of the upper term as the base sentence for Chioino.  The first circumstance was that there were "multiple offenses for which consecutive sentences could have been imposed."  RT 8.  Rule 4.421(a)(7) identifies as a circumstance in aggravation that the "defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed."  Although Chioino had been charged with twelve crimes, see Resp. Exh. A, CT 1-9,  he only pled guilty to the robbery so there were no other convictions for the court to consider, let alone convictions for which consecutive sentences had not been imposed.  The first circumstance has no evidentiary support and therefore could not have been found to exist, regardless of whether

8

the standard was proof beyond a reasonable doubt or by a preponderance of the evidence.

The second circumstance the sentencing judge identified as support for the upper term as the base sentence was that "these crimes involved great violence or the threat of great violence." RT 8. There does not appear to be a factual basis for this finding in the record. The only facts admitted that touched on the violence potential were that the crime took place in a residence and that a firearm had been used in the robbery, but neither of those inevitably meant that there was a great threat of violence. (Also, the fact that the robbery took place in a dwelling apparently already had been taken into account as it made the robbery a first degree robbery and that was the basis for the application of the 3, 4, or 6 year sentencing triad instead of the 2, 3, or 5 year sentencing triad for second degree robbery. See Cal. Penal Code § 212.5(a), 213(a)(1)(B).)

The third circumstance the sentencing judge identified as support for the upper term was that Chioino had used a firearm. RT 8. This could not be used as a factor in aggravation under Rule 4.421 because it was used as a sentence enhancement to add ten years to Chioino's sentence. See Cal. Rule of Court 4.420(c)(7). The firearm use could not do double-duty as a factor in aggravation.

The prior conviction was not identified by the sentencing judge as a circumstance under Rule 4.421 that supported the upper term sentence. In any event, the prior conviction could not be relied upon because it was used for the separate purpose of doubling the base term. Cal. Penal Code § 1170(b) ("The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law.")

Having determined that the record does not support the upper term sentence, the court considers whether the California Court of Appeal's determination that Chioino had consented to sentencing without any fact finding was an unreasonable application of or contrary to Blakely. Although one might argue that Chioino's request for immediate sentencing amounted to consent to judicial fact-finding, one cannot reasonably determine that there was a consent to sentencing without any fact finding. The criminal complaint listing twelve separate crimes suggested that Chioino's criminal escapade may have been far more

9

extensive and serious than a single robbery, but his sentence had to be tied to the crime which he pled to rather than the crimes with which he was charged.[1] His request to be sentenced immediately could have been denied or he could have been required (as a condition of immediate sentencing) to admit to the necessary aggravating circumstances to permit immediate sentencing to the upper term, but the request cannot reasonably be interpreted to an agreement to a sentence without any fact finding and not authorized by law. Chioino did not consent to the imposition of the upper term without any circumstances in aggravation being present, but that is what happened at sentencing and was approved by the California Court of Appeal. Blakely does state that a "State is free to seek judicial enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding," Blakely, 542 U.S. at 310, but stretching that to mean that a defendant who consents to immediate sentencing implicitly consents to sentencing without any fact finding is objectively unreasonable. See 28 U.S.C. § 2254(d). This does not necessarily mean that a defendant cannot explicitly consent to forego his Apprendi rights, but only that his consent to forego these essential rights cannot be implied from the limited circumstances that he requested immediate sentencing without a probation report and did not argue for a lesser sentence.

Apprendi and Blakely mention two related rights: the right to a jury trial and the right to proof beyond a reasonable doubt. See Apprendi, 530 U.S. at 476-77, 490. Although a guilty plea may undermine a claim that a defendant has been deprived of a jury trial, it does not weaken or eliminate any claim that a defendant has been deprived of his right to be convicted on proof beyond a reasonable doubt. That level of proof applies not only to elements of the crime but also to sentencing factors. Here, the sentence imposed deprived Chioino of his right to have the facts necessary to impose the upper term sentence found true by proof beyond a reasonable doubt.[2]

The last question is whether the error was harmless, as an Apprendi error is subject to harmless error analysis. See Washington v. Recuenco, 126 S. Ct. 2546 (2006). The proper framework for the harmless error analysis is found in Neder v. United States, 527 U.S. 1

10

(1999). See Recuenco, 126 S. Ct. at 2551-53; United States v. Zepeda-Martinez, 470 F.3d 909, 910 (9th Cir. 2006):

> Under Recuenco and Neder, an error is harmless if the court finds beyond a reasonable doubt that the result "would have been the same absent the error." Neder, 527 U.S. at 19. Neder explained that where the record contains "overwhelming" and "uncontroverted" evidence supporting an element of the crime, the error is harmless. id. at 17, 18. Conversely, the error is not harmless if "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding." Id. at 19.

Zepeda-Martinez, 470 F.3d at 913 (parallel citations omitted). Zepeda-Martinez and Neder were direct appeal cases and therefore articulated a standard slightly differently than that applicable in a habeas action where relief is not available unless the trial error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). Regardless of whether this court must find that the error did not result in actual prejudice or must find beyond a reasonable doubt that the result would have been the same absent the error, the requisite level of certainty does not exist in Chioino's case. Under the framework identified in Neder and Zepeda-Martinez, this court looks at the record to consider the state of the evidence in support of the sentencing factor to determine whether the error was harmless. As discussed above, the record here simply does not have any evidence, let alone uncontroverted and overwhelming evidence, to support the imposition of the upper term on the robbery. The error was not harmless.

## CONCLUSION

The petition for writ of habeas corpus is GRANTED. Chioino's right under Apprendi and Blakely to be sentenced based on facts proven beyond a reasonable doubt was violated when he received the upper-term of 6 years as the base term for his sentence. The record only supports the imposition of the middle term of 4 years as the base term. Chioino's total sentence thus should be 18 years: the middle term of 4 years doubled for the prior conviction (4 x 2 = 8 years) plus the 10-year enhancement for the use of the weapon.

Within **120 days** of the date of this order, the State of California shall cause Chioino's sentence in Monterey County Superior Court Case No. SS022872 to be fixed in accordance

with this order. This court leaves it to state officials to determine the appropriate procedure to fix the unconstitutional sentence, i.e., whether state law requires that Chioino be re-sentenced or requires an amended abstract of judgment to correct the sentence or requires correction in another way.

The clerk shall mail a copy of this order to the Monterey County Public Defender at 111 W. Alisal Street, Salinas, CA 93901. The court requests that the Monterey County Public Defender provide representation for Chioino if he meets the eligibility requirements and if counsel is necessary for the resentencing.

The clerk shall close the file.

IT IS SO ORDERED.

DATED:   October 22, 2007

Marilyn Hall Patel
United States District Judge

# NOTES

1.      It is not mere speculation that there was more than a single robbery, as this court learned last year when it decided a separate habeas petition concerning Chioino's conviction from a neighboring county in Chioino v. Kernan, C 05-1816 MHP.  In the order denying the petition in that case, the court summarized the criminal escapade thusly: "In brief, Chioino went on a crime spree on August 22-23, 2002 in Santa Cruz and Monterey counties during which he broke into several homes, attacked several different people, stole several cars, and shot one of the victims.  The crime spree culminated with a high speed car chase during which Chioino hit several cars and eventually got stuck in the center divide of Highway 1."

2.      Even under the California Supreme Court's most recent effort to reconcile Apprendi and the DSL, Chioino could not have been sentenced to the upper term for the robbery.

        Before Cunningham was issued, the California Supreme Court had determined "that the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial."  People v. Black, 35 Cal. 4th 1238, 1244 (Cal. 2005) ("Black I").  When the U.S. Supreme Court decided Cunningham, it vacated and remanded Black I.  Thereafter, the California Supreme Court issued its decision in Black II.

        In Black II, the court held that "so long as a defendant is eligible for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury."  41 Cal. 4th at 813.  The court saw the jury trial and proof beyond a reasonable doubt rights as tied to the factual findings, not the sentencing choices based on those factual findings.  As long as one aggravating circumstance had been determined in a constitutionally sound way (i.e., with no violation of the rights to a jury trial and proof beyond a reasonable doubt), the defendant was within the group as to whom the upper term legally could be applied and was not "legally entitled" to the middle term.  See id. at 813; see also Blakely, 542 U.S. at 308-09.  For that defendant, the upper term sentence was the statutory maximum for purposes of Apprendi and Blakely.  See Black II, 41 Cal. 4th at 813.  The defendant did not have a right to a jury trial on all aggravating circumstances as long as one had been established in compliance with Blakely and did not have a right to a jury trial on the question of whether aggravating circumstances outweighed the mitigating ones.  Black II, 41 Cal. 4th at 814-15 & n.4.

        Even if the restrictive interpretation in Black II is a correct interpretation of the extent of the federal rights to a jury trial and proof beyond a reasonable doubt under the DSL, there was not a single fact found that bumped Chioino into the group of defendants who lawfully could receive an upper term sentence under Black II.  His prior conviction and firearm use were already doing duty as sentence enhancers under other provisions and did not make him someone who could receive the upper term under California law.  The other bases for the upper term – multiple convictions and inducement of great fear – had no support in the record and could not have been found to be proven beyond a reasonable doubt.  That is, not a single aggravating factor had been found that made Chioino not legally entitled to receive the middle term.

14